Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El recurso instado en el caso de epígrafe interesa la revocación de una resolución emitida el 2 de noviembre de 2001 por el Tribunal de Primera Instancia, Subsec'ción de Distrito; Sala de Aguadilla (Hon. Manuel Vera Vera, J.). Mediante ésta, dicho foro denegó la desestimación de las denuncias presentadas contra los aquí peticionarios. Atendidas las circunstancias del caso, concluimos que no existen razones que justifiquen intervenir con el dictamen recurrido, por lo que procede confirmar el mismo.
T.
Se presentaron denuncias contra Juan Cordero Corchado, Félix Rodríguez Rivera y José M. Irizarry Rivera por el delito de conducir un vehículo de motor bajo los efectos de bebidas embriagantes, Artículo 7.02 de la Ley Núm. 22 de 1o de enero de 2000 (“Ley 22”), 9 L. P. R. A. see. 5202.
Posteriormente, la representación legal ‘ de los peticionarios solicitó, en cada uno de los casos, la desestimación de las denuncias al amparo de los incisos (a) y (p) de la Regla 64 de Procedimiento Criminal, 34 L. P. R. A. Ap. II. Sostuvo que para la fecha de los hechos no existía reglamentación alguna que estableciera el procedimiento a seguir al utilizar los equipos electrónicos para determinar el porcentaje de alcohol en la sangre, el manejo y la conservación de las pruebas realizadas. Alegó que con la aprobación de la Ley 22 se derogó la antigua Ley de Tránsito -Ley Núm. 141 de 20 de julio de I960' (“Ley 141”)- y los reglamentos aprobados en virtud de la misma para realizar las pruebas de alcohol/ la conservación de las muestras utilizadas y sus resultados. Además, señaló que a pesar de que la Ley 22 expresamente autorizó al Departamento de Salud a aprobar reglamentos para regular los procedimientos antes mencionados, a la fecha de los hechos no se habían puesto en vigor los mismos. En cuanto al inciso (a) de la Regla 64, curiosamente argüyó que “[a]l presentarse la denuncia en abierta violación a los propios estatutos de la Ley 22 [dado que no se habían promulgado los reglamentos antes mencionados], el Estado carecía de autoridad para presentar la denuncia”. Apéndice del *1137 Recurso, pág. 19. De otra parte y sobre el reclamo al amparo del inciso (p), señaló que la determinación de causa efectuada contra los peticionarios “...fue contraria a derecho, ya que para la fecha de los hechos el Estado había incumplido con el requisito ministerial de presentar en el Departamento de Estado los nuevos reglamentos para controlar los distintos equipos electrónicos para determinar porcentaje de alcohol en una persona...”. Apéndice del Recurso, pág. 18. También indicó que la intervención que realizó el Estado en la persona de los peticionarios fue ilegal, ya que el procedimiento para la toma de las pruebas de aliento a que fueron sometidos los peticionarios no estaba debidamente estatuido, de forma que se utilizaron “...reglamentos viejos, que el propio legislador dejó expresamente sin validéz [sic] jurídica...”. Apéndice del Recurso, pág. 21.
Los casos fueron consolidados exclusivamente a los fines de considerar las solicitudes de desestimación. A tal efecto se celebró una vista. El Ministerio Público se opuso a la desestimación arguyendo que aun cuando el planteamiento prevaleciera, sólo tendría el efecto de que se eliminara el resultado de la prueba de aliento, mas no la desestimación de los cargos, ya que contaba con el testimonio del agente interventor, el cual de ser creído sería suficiente para establecer los elementos del delito. Las peticiones de desestimación fueron declaradas No Ha Lugar en corte abierta.
Posteriormente y a solicitud de los peticionarios, se emitió la resolución impugnada en la que se recogen los fundamentos decisorios. El tribunal a quo concluyó que el planteamiento de desestimación al amparo de la Regla 64 (a) carecía de fundamento. Indicó que “[bjasta examinar las denuncias para quedar convencidos que imputan todos los elementos del delito tipificado en el Artículo 7.02..., esto es, conducir [un vehículo de motor] bajo los efectos de bebidas embriagantes”. Apéndice del Recurso, pág. 6. En cuanto al otro extremo -la desestimación bajo el inciso (p) de la Regla 64 — , extrañamente expresó:
“Recordemos que no estamos ante un planteamiento de supresión de evidencia o de que se usó evidencia no admisible en la determinación de causa para arresto. El planteamiento se limita a señalar que por el alegado hecho de que se revocaron los reglamentos aprobados al amparo de la Ley 141, el Estado no tiene autoridad para presentar denuncias por infracción al Artículo 7.02 por no existir Reglamento vigente y válido para las pruebas de alcohol a la fecha de la alegada ocurrencia de los hechos. ” Apéndice del Recurso, pág. 6.
El foro inferior determinó que, contrario a lo sostenido por los peticionarios, para la fecha de los hechos existía reglamentación vigente que disponía el procedimiento referente a la toma de pruebas de alcohol, ya "... que toda la reglamentación aprobada por el Secretario de Salud a la fecha de la derogación de la Ley 141, y en particular el Reglamento 49, se mantiene en vigor hasta tanto sea el propio Secretario el que la enmiende, o promulgue nueva reglamentación”. Apéndice del Recurso, pág. 12. Señaló, además, que: “[l]a vigencia del reglamento no determina la existencia o no de delitos, como tampoco concede, restringe o quita autoridad jurisdicción- al Estado para procesar o encausar por violaciones a la Ley de Vehículos y Tránsito. El reglamento del Departamento de Salud únicamente determina procesos y mecanismos técnicos para la toma de muestras y la realización de pruebas dirigidas, entre otras, a determinar el contenido de alcohol en la sangre...
Por tanto, no seguir las disposiciones reglamentarias y su trámite, o no estar en vigencia una reglamentación para regular dichos procesos, solamente podría afectar la admisibilidad de evidencia en un juicio criminal, conducente a demostrar la comisión de un delito, o de un elemento del delito.” Apéndice del Recurso, pág. 7. (Citas omitidas).
Inconformes, acuden ante nos los peticionarios mediante la oportuna interposición del recurso de epígrafe. Sostienen que el foro de instancia incidió al denegar la solicitud de desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal. A favor de su posición, aducen el argumento previamente esbozado ante el tribunal inferior, a saber, que la Ley 22 derogó tanto la Ley 141 como los reglamentos aprobados a su amparo, de forma que al momento de los hechos no existía reglamentación alguna sobre la utilización de los equipos para determinar, el porcentaje de alcohol en la sangre de los conductores, dejando así al arbitrio de los funcionarios *1138 que realizan los análisis químicos el procedimiento que seguirán al efectuar los mismos. Enfatizan, además, en que “[independientemente de su valor probatorio, no son admisibles [como prueba de cargo] los análisis que se realizan ausentes de normas que regulen estos procedimientos, o ausentes de normas que regulen el uso de los instrumentos científicos necesarios o que regulen quienes [sic] son las personas cualificadas y certificadas para tomar los mismos”. Escrito del Recurso, pág. 11. Requerimos la comparecencia del Procurador General y con el beneficio de la misma procedemos a resolver.
II
La solicitud de desestimación bajo la Regla 64 (p) es el mecanismo apropiado para cuestionar la “corrección” de la determinación de causa probable para arrestar (por un delito menos grave) o acusar. Pueblo v. Rivera Rodríguez, opinión de 29 de febrero de 2000, 2000 J.T.S. 46, pág. 773; Pueblo v. Jiménez Cruz, opinión de 17 de junio de 1998, 98 J.T.S. 75, págs. 1073-1074. Se ha señalado que la carga sobre el imputado de delito para que se desestime una denuncia porque no se determinó causa probable conforme a derecho es sumamente onerosa. Tal petición sólo prevalecerá si se establece: (1) que en la vista de determinación de causa hubo ausencia total de prueba que pudiera establecer que se cometió el delito que se le imputa; o (2) que se violó alguno de los requisitos de ley dispuestos en las Reglas 6 y 23. E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Forum, Vol. III, 1993, págs. 256-259; D. Nevares Muñiz, Sumario de Derecho Procesal Puertorriqueño, San Juan, Instituto para el Desarrollo del Derecho, Inc., 5a ed., 1998, secs. 5.36 y 1049; O. E. Resumil, Derecho Procesal Penal, New Hampshire, Butterworth Legal Publishers, t. 2, págs. 194-200. Por ausencia total de prueba, se entiende que no existe prueba que tienda a establecer uno o todos los elementos de delito o que demuestre probable conexión del “acusado” con el delito imputado. Pueblo v. Rivera Alicea, 125 D. P. R. 37, 42 (1989); Vázquez Rosado v. Tribunal Superior, 100 D. P. R. 592, 594-595 (1972). En cambio, el incumplimiento con los requisitos de ley que gobiernan la determinación de causa probable, según el texto de la propia Regla 64 (p), conlleva que la determinación no fue efectuada por un juez o que el imputado del acto delictivo no fue debidamente citado a la vista. Cf. Martínez Cortés v. Tribunal Superior, 98 D. P. R. 652, 654-656 (1970).
La consideración de las solicitudes promovidas por los peticionarios nos convence de que, contrario a lo que concluyó el foro de instancia, no se trataba de peticiones de desestimación, sino de supresión de evidencia. Resulta evidente que en ninguna de ellas se adujo alguno de los fundamentos reconocidos por la Regla 64 (p) - ausencia total de prueba o incumplimiento con los requisitos de ley-, sino que planteaban un reclamo de ilegalidad e inadmisibilidad de la prueba de cargo. De los escritos sometidos ante el foro inferior, se desprende que los peticionarios no sostuvieron que en la vista de determinación de causa -Regla 6-, no se presentó prueba alguna que estableciera los elementos del delito, su vinculación a los alegados actos delictivos ni que se incumplió con alguna de las garantías de esa etapa procesal. Por el contrario, sostuvieron que la determinación de causa efectuada en su contra fue contraria a derecho porque la prueba aportada fue producto de una intervención ilegal del Estado en sus personas, dado que al momento en que se realizaron las pruebas de alcohol no existía reglamentación alguna al respecto. Dicho de otra forma, los peticionarios sostuvieron que la determinación de causa fue contraria a derecho porque la prueba utilizada es inadmisible.
Ante tales circunstancias, no hay duda de que el foro de instancia actuó correctamente al denegar la desestimación de las causas al amparo de la Regla 64 (p), toda vez que no están presentes ninguna de las circunstancias que así los justificarían. Asimismo, resulta evidente que el tribunal a quo debió atender el reclamo como lo que era: una petición de supresión de evidencia fundamentada en la supuesta ilegalidad de su obtención. Curiosamente, ello en forma alguna hubiera afectado el resultado, ya que, como concluyó el aludido tribunal, la supuesta ilegalidad que vicia la prueba utilizada en la vista de determinación de causa, es inexistente.
III
Mediante la antigua Ley de Tránsito -Ley 141, supra, en su sección 5-803(d)-, la Legislatura expresamente *1139 delegó en el Secretario de Salud la facultad para reglamentar todo lo referente al análisis y conservación de la evidencia utilizada para determinar el porciento de control de alcohol en la sangre de los conductores de vehículos de motor. A tenor con la autoridad conferida, el Departamento de Salud adoptó reglamentación sobre los procedimientos de análisis químico a seguir. Primeramente, se aprobó el Reglamento Núm. 30 de 29 de septiembre de 1960 que comenzó a regir en la misma fecha de su aprobación. Éste fue enmendado por el Reglamento Núm. 49 de 15 de marzo de 1983 en lo referente a la forma y el sitio en que habrían de tomarse las muestras para el análisis toxicológico correspondiente.
La nueva Ley de Tránsito expresamente derogó en su totalidad la Ley 141 de 20 de julio de 1960. Artículo 28.02 de la Ley 22. En su el Artículo 7.09 (g) de la Ley 22, supra, sec. 5209 (g), le otorgó “nuevamente” al Secretario de Salud la facultad para establecer la reglamentación sobre los métodos de análisis y conservación de evidencia relacionada al manejo de vehículos de motor. Sin embargo, la referida Ley nada dispone acerca de los reglamentos previamente aprobados al amparo de la antigua Ley 141.
Sabido es que “[e]l principio de que las leyes sólo se derogan por otras leyes posteriores y que contra su observación no prevalece el desuso, la costumbre o la práctica en contrario, es aplicable también a las reglas y reglamentos emitidos por agencias administrativas, y a sus órdenes y resoluciones”. R. Elfren Bernier y J. A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, San Juan, Publicaciones JTS, Inc., 1987, pág. 419.
La derogación de un estatuto es el acto mediante el cual el organismo con el poder regulador -la Legislatura o una agencia administrativa-, deja sin efecto una disposición anterior. Obviamente, se trata de una disposición previa promulgada por él, ya que únicamente la entidad con la facultad para crear un estatuto tiene la autoridad para abrogarlo o derogarlo. La derogación de estatutos puede ser expresa o tácita. Nos encontramos ante una derogación expresa cuando así mismo lo establece la ley posterior. Por el contrario, la derogación es tácita cuando la ley posterior contiene preceptos que son de alguna forme irreconciliables o contrarios a los de la ley anterior. Artículo 6 del Código Civil, 31 L. P. R. A. Sec. 6. Las derogaciones tácitas no son favorecidas por nuestros tribunales. Aponte v. Srio. de Hacienda, E. L. A., 125 D. P. R. 610, 628 (1990).
Cónsono con estos principios, en el ámbito del derecho administrativo, el Tribunal Supremo ha resuelto que el hecho de que se enmiende o altere una ley no conlleva la automática derogación de los reglamentos vigentes aprobados en virtud de la misma. Para ello, es necesario que así expresamente se disponga. Pueblo v. Sanjurjo, 58 D. P. R. 649, 651 (1941).
Los reglamentos para el análisis y la conservación de las pruebas relacionadas al porcentaje de alcohol en la sangre de los conductores de vehículos de motor que fueron aprobados al amparo de la Ley 141, no fueron derogados con la aprobación de la Ley 22. Varias razones militan a favor de ello. En primer lugar, la Ley 22 expresamente derogó las disposiciones de la Ley 141, mas guardó absoluto silencio respecto a los reglamentos aprobados a su amparo. Asimismo, tampoco hubo una derogación implícita de estos reglamentos, toda vez que las disposiciones de la nueva ley en forma alguna son incompatibles con los procedimientos dispuestos en los mismos. Resulta, además, que los aludidos reglamentos no podían ser derogados mediante dicha legislación, ya que únicamente el organismo con autoridad para promulgarlos tenía la facultad para dejarlos sin efecto. Así, estos reglamentos estuvieron en vigor hasta que el Secretario de Salud mediante la aprobación del Reglamento Núm. 6346 de 14 de septiembre de 2001 expresamente los derogó.
Todo lo anterior nos lleva a concluir que para la fecha de los hechos estaban vigentes los Reglamentos Núm. 30 y 49. Yerran, por tanto, los peticionarios al sostener que a ese momento no existía reglamentación alguna que dispusiera la manera en que se realizarían las muestras de sangre y aliento a individuos que se sospecha estaban conduciendo en estado de embriaguez. En consecuencia, no existe arbitrariedad o ilegalidad alguna en los procedimientos utilizados para obtener la pmeba de embriaguez de los peticionarios, por lo que no *1140 procede la supresión de evidencia solicitada.
IV
Por los fundamentos previamente expuestos, se confirma la resolución emitida el 2 de noviembre de 2001 por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Aguadilla.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General